IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

AUDREN LYNN McSPERITT,           )
                                 )
            Plaintiff,           )
                                 )
                                 ) Case No. CIV-19-056-JFH-KEW
                                 )
COMMISSIONER OF THE SOCIAL       )
SECURITY ADMINISTRATION,         )
                                 )
            Defendant.           )

**REPORT AND RECOMMENDATION**

Plaintiff Audren Lynn McSperitt (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that he was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 54 years old at the time of the decision. He has a tenth-grade education. He worked in the past as a stocker and a building maintenance repairer. He alleges an inability to work beginning June 21, 2014, due to limitations resulting from coronary artery disease, status post bypass with grafting X4, diabetes, depression, and anxiety.

### Procedural History

On May 26, 2016, Claimant protectively filed for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. He also filed for supplement security income benefits pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's

applications were denied initially and upon reconsideration. On October 24, 2017, ALJ James Linehan conducted an administrative hearing from McAlester, Oklahoma. Claimant was present and testified at the hearing. On February 2, 2018, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on December 14, 2018, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform light work, with limitations.

### Errors Alleged for Review

Claimant asserts the ALJ committed error by failing to properly evaluate the medical opinion evidence.

### Evaluation of Opinion Evidence

In his decision, the ALJ found Claimant suffered from severe impairments of coronary artery disease, status post bypass with grafting X4, diabetes, depression, and anxiety. (Tr. 19). He determined Claimant could perform work at the light exertional level, with additional limitations. Specifically, Claimant could

4

lift twenty pounds occasionally, lift and carry ten pounds frequently, and stand and walk alternatively for a total of two hours each activity in an eight-hour workday, with sitting occurring intermittently throughout the day. Claimant could reach, push, and pull with his upper extremities up to six hours in an eight-hour workday, and he could use his hands for grasping, holding, and turning objects up to six hours per eight-hour workday. Claimant could alternatively climb, stoop, kneel, crouch, crawl, and balance up to two hours each activity per eight-hour workday. Because of non-exertional limitations, Claimant was limited to work at SVP level of 2 or less as defined by the Dictionary of Occupational Titles. Claimant had the ability to understand, remember, and carry out ordinary and/or routine written or oral instructions and tasks and to set realistic goals and plans independently of others. He further had the ability to interact on an occasional basis with supervisors, co-workers, and the public. (Tr. 22).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of small part assembler, conveyor line bakery worker, and mail sorter, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 30-31). As a result, the ALJ concluded Claimant was not under a disability from June 21, 2014, his amended onset date, through the date of the decision. (Tr. 31).

Claimant contends the ALJ failed to properly evaluate the opinions from consulting psychologist Theresa Horton, Ph.D., and from state agency psychologists Laura Eckert, Ph.D., and Laura Lochner, Ph.D. He contends that although the ALJ purportedly gave their opinions "great" or "substantial" weight, he failed to include all their limitations in Claimant's mental RFC assessment.

"[I]n addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (citation omitted). The ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004), citing *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984).

Claimant first argues that even though the ALJ assigned "great weight" to Dr. Horton's opinion, he failed to explain in the decision why he did not account for Dr. Horton's finding that Claimant would likely not adjust well in fast paced or densely populated areas in the RFC. Dr. Horton conducted a mental status examination of Claimant on September 27, 2016. The ALJ discussed in detail Dr. Horton's observations of Claimant, his reports of symptoms, activities of daily living, social functioning, ability to complete tasks timely and appropriately, and any episodes of

6

decompensation and their resulting effects. He discussed her findings from the mental status examination, including the administration of the Montreal Cognitive Assessment and Claimant's result. Dr. Horton assessed Claimant with mild cognitive impairment and unspecified depressive disorder (related to his cardiac medical condition). As a prognosis, Dr. Horton stated: "Mr. McSperitt appears capable of understanding, remembering and managing most simple and somewhat more complex instructions and tasks, though may require maintaining lists and at times prompting. He likely would not adjust as well in areas that are fast paced and/or densely populated." (Tr. 27-28, 640-44).

 The ALJ afforded "great weight" to Dr. Horton's opinions, again noting that Dr. Horton determined Claimant "was likely capable of understanding, remembering and managing most simple and somewhat more complex instructions and tasks. She further stated that he might require maintaining lists and 'at times' prompting and would likely not adjust as well in areas that are fast paced and/or densely populated." The ALJ specifically stated in his decision that he had considered these portions of Dr. Horton's opinion and had accounted for them by "limiting the claimant to unskilled (SVP 2) level work as outlined above." (Tr. 29).

 Although Dr. Horton's prognosis for Claimant included the statement that he "likely would not adjust as well in areas that are fast paced and/or densely populated," the statement merely

7

indicates that Claimant could potentially have some difficulties but lacks the certainty necessary to require that the ALJ include related functional limitations in the RFC. *See*, *e.g.*, *Paulsen v. Colvin*, 665 Fed. Appx. 660, 666 (10th Cir. 2016) ("But Dr. Valette did not assign any functional limitations to Ms. Paulsen other than to mention that Ms. Paulsen '*probably* has difficulty with concentration and remembering because of attention problems.' Accordingly, the ALJ was not required to consider Dr. Valette's opinion in formulating Ms. Paulsen's RFC.") (emphasis in original); *Blazevic v. Colvin*, 2015 WL 5006139, at *10 (D. Kan. Aug. 20, 2015) (finding statement from physician that "I am very concerned about [claimant's] ability to maintain steady employment at the present time due to his symptomology" was not an "opinion" because it expressed "uncertainty regarding [claimant's] ability, rather than his opinion that [claimant] can or cannot maintain steady employment.").

Claimant next argues the ALJ failed to account for certain limitations in the RFC from the state agency psychological consultants, Dr. Eckert and Dr. Lochner, even though he found their opinions persuasive and afforded them "substantial weight." Specifically, Claimant contends the ALJ did not include in the RFC the state agency psychologists' mental functional limitation that he could adapt to "some forewarned changes in a usually stable work setting."

8

Dr. Eckert and Dr. Lochner each reviewed the evidence and made identical findings as to Claimant's mental RFC. They determined Claimant had understanding and memory limitations, but he was not significantly limited in his ability to remember locations and work-like procedures or in his ability to understand and remember very short and simple instructions. He was moderately limited in his ability to understand and remember detailed instructions. Claimant had limitations with sustained concentration and persistence, but he was not significantly limited in his ability to carry out very short and simple instructions, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. Claimant had moderate limitations in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, and work in coordination with or in proximity to others without being distracted by them.

Dr. Eckert and Dr. Lochner also found that Claimant had social interaction limitations. He was moderately limited in his ability to interact appropriately with the general public. He had no

9

significant limitation in his abilities to ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, or maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. Claimant was moderately limited in his ability to respond appropriately to changes in the work setting, but he had no significant limitations in his abilities to be aware of normal hazards and take appropriate precautions, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others. In the narrative portion of their findings, Dr. Eckert and Dr. Lochner explained Claimant could perform simple and some complex type work (1-4 steps) with routine supervision and could relate to supervisors, co-workers, and the general public only on a superficial work-type basis. He could adapt to a work setting and some forewarned changes in a usually stable work setting. (Tr. 86-88, 119-121).

In the decision, the ALJ stated that he found persuasive the mental RFC capacity by the state agency consulting psychologists and afforded their opinions "substantial" weight. He acknowledged that the psychologists had not personally examined Claimant, but they had reviewed the evidence in the record, they provided specific reasons for their opinions of functional limitations, and

10

their assessments made clear they had considered Claimant's subjective complaints. The ALJ noted the psychologists were "unbiased as third party examiners as well as their familiarity and expertise in these types of determinations is unmatched in the record." (Tr. 29).

Although the state psychologists found Claimant had a moderate limitation in his ability to respond appropriately to changes in a work setting, in their narrative explanations, both Dr. Eckert and Dr. Lochner concluded Claimant could "adapt to a work setting and some forewarned changes in a usually stable work setting." Because there was no significant limitation in this regard, the RFC assessment limiting Claimant to understanding, remembering, and carrying out ordinary and/or routine written or oral instructions and tasks, setting realistic goals and plans independent of others, and interacting on an occasional basis with supervisors, co-workers, and the public appropriately accounts for the state agency reviewing psychologists' opinions.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and

Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 17th day of August, 2020.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE